FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 06, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REBECCA S.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br> Defendant. | No.   1:25-cv-3187-EFS <br><br> **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |

Plaintiff Rebecca S. claims she is unable to work due to physical and mental impairments and asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

benefits. Plaintiff establishes that additional vocational expert testimony is necessary to determine whether she can complete the training period for the identified occupations considering her social-interaction limitations, and if she is able to complete the training period, then a new evaluation of the medical opinions and Plaintiff's symptom reports is required due to evaluation errors by the ALJ.

## I.    Background

Plaintiff filed for benefits based on lupus, Arnold Chiari, depression, anxiety, bipolar, and arthritis.[2] After her applications were denied, she attended a telephone hearing before an ALJ in May 2023.[3] Plaintiff testified that she lives with her three-year-old son and her mother, walks to do errands, cleans the litter box and vacuums,

---

[2] Administrative Record (AR) 208–70. As the ALJ noted, there are two different claims periods: for the Title 2 claim, the alleged onset date is July 5, 2018, and the date last insured is December 31, 2019; for the Title 16 claim, the relevant period begins on the protective filing date of April 28, 2021.

[3] AR 46–76, 124–40.

DISPOSITIVE ORDER - 2

completed the eighth grade and later obtained a GED and a phlebotomy certification, lost prior part-time jobs because she would get overwhelmed and need to call out, socializes with a friend who comes over once or twice a month, enjoys crafting, and has daily headaches and migraines which require her to lay down about three times a week, and her prescribed mood stabilizer does not manage her constant anxiety and depression.[4]

The ALJ issued a decision denying benefits.[5] Plaintiff sought federal-court review of the denial, and the district court reversed the ALJ's denial of benefits, remanding the case for further proceedings, including assessing the severity and limiting nature of Plaintiff's migraines and correctly crediting Christopher Waters, PhD's treating opinions to him rather than to a non-medical source.[6]

---

[4] AR 49–67.

[5] AR 14–38.

[6] AR 1415–63 (EDWA No. 1:24-cv-3039-EFS).

DISPOSITIVE ORDER - 3

The second administrative hearing was held in July 2025 with ALJ Richard Geib.[7] Plaintiff, medical expert Vladimir Karpitskiy, MD, PhD, and a vocational expert testified. After the hearing, the ALJ issued a decision again finding Plaintiff not disabled.[8] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence."[9] As to the medical opinions, the ALJ found:

- The opinions of Norman Staley, MD, Mark Magdaleno, MD, Carole Moore, PhD, and Dr. Karpitskiy persuasive.

- The opinion of Lisa Benton, ARNP, generally persuasive.

---

[7] AR 1354–81.

[8] AR 1318–49. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[9] AR 1329. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

DISPOSITIVE ORDER - 4

- Renee Eisenhauer, PhD's finding of insufficient evidence on the Title 2 claim unpersuasive but her opined limitations for the Title 16 claim persuasive.

- The opinions of Kayla Elliott, PA-C, Jenifer Schultz, PhD, David Morgan, PhD, and Dr. Waters not persuasive.[10]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2019.

- Step one: Plaintiff had not engaged in substantial gainful activity since July 5, 2018, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: lumbar degenerative disc disease, fibromyalgia, lupus, migraine headaches, generalized anxiety disorder, social anxiety, and bipolar 1 disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

---

[10] AR 1325–40.

DISPOSITIVE ORDER - 5

- RFC: Plaintiff could perform light work except she:

  can frequently climb ramps and stairs; can never climb ladders, ropes, or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can have occasional exposure to fumes, odors, dusts, gases and poor ventilation, and occasional exposure to work hazards (such as unprotected heights and moving machinery. The claimant can understand, remember, and carry out simple and detailed instructions that can be learned in thirty days or less. The claimant can have occasional contact with the general public, coworkers, and supervisors, and can perform work involving occasional changes in the work routine and setting. The claimant can perform work in normal ambient lighting.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as marker, routing clerk, and small products assembly II.[11]

Plaintiff did not file written exceptions to the ALJ's decision with the Appeals Council and the Appeals Council did not assume jurisdiction

---

[11] AR 1321–42.

DISPOSITIVE ORDER - 6

on its own, so the ALJ's decision became the Commissioner's final decision.[12] Plaintiff now appeals to the district court.[13]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[14] and such error impacted the nondisability determination.[15] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

---

[12] *See* AR 1319. 20 C.F.R. §§ 404.984, 416.1484.

[13] ECF No. 1.

[14] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[15] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

DISPOSITIVE ORDER - 7

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16]

### III.   Analysis

Plaintiff argues several errors by the ALJ: (1) the RFC is consistent with disability, rather than nondisability; (2) the ALJ erred when assessing Plaintiff's testimony; (3) the ALJ erred when evaluating the medical opinions; and (4) the ALJ did not properly assess Listings 12.04 and 12.06. The Commissioner argues Plaintiff fails to show that the ALJ's nondisability decision is unsupported by substantial evidence. As is explained below, due to an error relating to

---

[16] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

DISPOSITIVE ORDER - 8

the RFC, additional vocational expert testimony is required. Further, if necessary, on remand, the ALJ must bridge the analytical gap between the treatment records and the ALJ's evaluation of Plaintiff's symptom reports and the medical opinions, particularly for the period before Plaintiff resumed mental-health medications following her sessions with Dr. Waters.

## A.   RFC: Plaintiff establishes consequential error.

The RFC restricts Plaintiff to work with "occasional contact with the general public, coworkers, and supervisor."[17] Yet, as Plaintiff highlighted, the vocational expert (VE) testified that Plaintiff's contact with a supervisor would be more than occasional during the training/probationary period. Therefore, Plaintiff argues that, per the VE testimony, she is unable to complete the necessary training period

---

[17] AR 1328. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). *See also Robbins. v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006); SSR 96-8p: Assessing Residual Functional Capacity in Initial Claims.

DISPOSITIVE ORDER - 9

for the identified occupations and thus a remand for benefits is proper. In response, the Commissioner highlights that the VE testified that Plaintiff could perform the "material duties of the occupation" and therefore the ALJ's step-five finding is supported by the VE's testimony.

First, the VE testified that an individual with the at-issue RFC could perform work as a marker (DOT 209.587-034, with 165,175 jobs), routing clerk (DOT 222.687-022, with 122,348 jobs), and small products assembler II (DOT 739.687-030, with 28,749 jobs).[18] Second, the VE testified that these occupations have a training period that is up to thirty days.[19] This testimony was then followed by:

> Q (by counsel): If during that time period the individual is only able to have occasional contact with their, you know, supervisors, co-workers and job trainers that, you know comes to the training, HR meetings and those sort of things that would happen during that time period, would this be consistent with competitive work or would this be maybe a special accommodation.
>
> A (by VE): The exposure would be more than occasional during the training and probationary period, but like you

---

[18] AR 1376–78.

[19] AR 1378.

DISPOSITIVE ORDER - 10

> said, as far as performing the material duties of the occupation, they would not require more than occasional contact with others as specified in the hypothetical.[20]

There was no follow-up testimony by the VE as to the nature or duration of the training for the at-issue occupations. Therefore, it is unclear whether an individual with the identified RFC could complete the training for some of the at-issue jobs, or more pointedly, whether there remained a significant number of these jobs in the national economy for which such an individual could complete the training period and perform the material duties.

On remand, the ALJ is to take additional VE testimony and explain why Plaintiff can or cannot complete the training period given her social-interaction limitations.[21]

---

[20] *Id.*

[21] *See Sczepanski v. Saul*, 946 F.3d 152, 161–62 (2d Cir. 2020) (remanding for determination of whether the identified jobs had probationary periods). *See also Gatliff v. Comm'r of the SSA*, 172 F.3d 690, 694 (9th Cir. 1999) ("[S]ubstantial gainful activity means more

DISPOSITIVE ORDER - 11

**B.    Other Issues**

Plaintiff also argues the ALJ erred by not properly assessing her testimony, including her allegations about headaches and mental-health symptoms, and the medical opinions offered by Dr. Karpitskiy, Dr. Waters, Dr. Morgan, Dr. Schultz, PA-C Elliott, Dr. Moore, and Dr. Eisenhauer, and by not properly assessing the Listings.

If on remand, the VE testifies that an individual with Plaintiff's RFC *can* complete the training period and perform the material duties of a significant number of jobs in the national economy, the ALJ must engage in a new sequential disability evaluation, as Plaintiff has established error by the ALJ when evaluating her symptom reports and the medical opinions.

First, regarding the ALJ's assessment of Plaintiff's reported headache symptoms, although the ALJ summarized the treatment records discussing Plaintiff's reported headache symptoms, Dr. Karpitskiy's testimony, and the prescribed medication, this

than merely the ability to find a job and physically perform it; it also requires the ability to hold the job for a significant period of time.").

DISPOSITIVE ORDER - 12

summary does not sufficiently explain *why* the ALJ found Plaintiff's reported headache symptoms inconsistent with her treatment and the treatment records. The ALJ must explain the basis for his findings on remand to permit court review of such for substantial evidence.[22]

Second, on remand, the ALJ must consider whether, how, and when Plaintiff's mental-health symptoms improved with treatment.[23]

---

[22] *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[23] 20 C.F.R. §§ 416.929(c)(3), 404.1529(c)(3). *See Smith v. Kijakazi*, 14 F.4th 1108, 1113–16 (9th Cir. 2021) (requiring the ALJ to consider how a claimant's impairment improved or declined over the relevant period); *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of

The ALJ's failure to meaningfully consider that Plaintiff's mental-health symptoms were more severe when she was not taking mental-health medications and that she had good cause to not take mental-health medications when breastfeeding impacted the ALJ's evaluation of the longitudinal treatment record and in turn Plaintiff's reported symptoms and the medical opinions. For instance, when Dr. Waters began treating Plaintiff in July 2020 he observed more severe mental-health symptoms, such as fidgeting hands, motor fatigue, and severe anxiety, than when he completed treating Plaintiff in May 2022, when he still observed an anxious and blunted mood, blunted affect, limited eye contact, and soft speech.[24] Dr. Waters issued his opinions when he was mid-treatment with Plaintiff in January and June 2021. Providing

working."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

[24] *See, e.g.*, AR 515–19, 542–47, 552–63, 596–97, 605–06, 610–11, 616–19, 623–24, 630–37, 641–42, 660–63, 676–79, 686–97, 769–76, 849–60.

DISPOSITIVE ORDER - 14

further comparison are the later medical records, which reflect that Plaintiff began reporting that her anxiety was manageable, her mood was "ok," and no depression at times.[25] On this record, it is critical that Dr. Waters' opinions, like the other medical opinions, be evaluated against the timing of Plaintiff's treatment and improvement.

Likewise, the timing and nature of Plaintiff's activities during the relevant period must be considered. The ALJ found several of the opinions inconsistent with Plaintiff's socializing and activities—a valid consideration. However, the treatment records reflect that Plaintiff's socializing and activities increased in 2023 and 2024, years after the start of the relevant claims periods.[26]

---

[25] *See, e.g.*, AR 1866–67, 1882–83, 2038–41, 2055–56, 2083.

[26] *Compare* AR 567 ("She spends her days staying at home most of the time, taking care of her son, and trying to take care of tasks around the house. She also plays games on her phone and will do art projects"), *with* AR 1751, 1766, 1781, 1792 (sharing that she is talking with friends and family and watching shows and doing crafts), *and* AR 1810, 1833 (attending paint night and going shopping with a friend), AR

DISPOSITIVE ORDER - 15

## IV.    Conclusion

Plaintiff established the ALJ erred. On remand, the ALJ is to obtain additional vocational testimony. If based on such testimony, there is a significant number of jobs that Plaintiff can complete the training period for and sustain the work, the ALJ is to re-evaluate the medical opinions and Plaintiff's symptom reports with meaningful articulation and evidentiary support considering the course of Plaintiff's impairments and their symptoms.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 17 and 20**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

---

2041 (mentioning that she has been playing dungeons and dragons and dating).

DISPOSITIVE ORDER - 16

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 6th day of July 2026.

_____

EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 17